# Illinois Official Reports

## Appellate Court

---

### *People v. Gordon*, 2017 IL App (3d) 140770

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DOUGLAS E. GORDON, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-14-0770 |
| Filed<br>Rehearing denied | January 13, 2017<br>February 7, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Will County, No. 13-CF-1699; the Hon. Daniel J. Rozak, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier and Mark D. Fisher, of State Appellate Defender's Office, of Ottawa, for appellant.<br><br>James Glasgow, State's Attorney, of Joliet (Jasmine Morton, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE SCHMIDT delivered the judgment of the court, with opinion.<br>Justices Carter and O'Brien concurred in the judgment and opinion. |

**OPINION**

¶ 1     Defendant, Douglas E. Gordon, appeals from his conviction for sexual exploitation of a child. He argues that the trial court erred in allowing the jury to hear evidence of statements he made years prior to the events in question. We affirm.

¶ 2                                        FACTS

¶ 3     The State charged defendant by indictment with two counts of sexual exploitation of a child (720 ILCS 5/11-9.1(a)(1) (West 2012)). The indictment alleged that "defendant knowingly, while in the presence of a child and with intent or knowledge that a child under the age of 13 years, *** would view his acts," engaged in sexual intercourse and oral sex.

¶ 4     Prior to trial, the State filed a motion to admit certain evidence. In the motion, the State alleged that the evidence at trial would show that defendant engaged in oral sex and sexual intercourse with his girlfriend in front of his son in an attempt to teach his son about sex. The State sought to introduce evidence that defendant had suggested to his then-wife, approximately two to three years earlier, that they demonstrate sexual intercourse for their son. The State argued that such evidence was relevant to show defendant's intent, motive, and absence of a mistake.

¶ 5     At the hearing on its motion, the State called Carolyn Gordon to testify as an offer of proof. Carolyn testified that she and defendant were married for four years. Before their divorce, they lived together with their three children and M.G., who was defendant's biological son with another woman. In 2009, when M.G. was eight years old, defendant told Carolyn that he would rather demonstrate sexual intercourse for M.G. than have a "sex talk" with him. Carolyn testified: "He wanted for me to show him *** how sex worked and the ins and outs sort of, if you will, how to have sex instead of just talk to him about it." Carolyn explained that defendant talked about it as if it was something he wanted to do in the future, when M.G. was old enough.

¶ 6     Approximately one year later, when M.G. was nine years old, defendant brought the subject up to Carolyn again. This time, defendant proposed he and Carolyn demonstrate sexual intercourse for M.G. and his female friend. Defendant suggested that after the demonstration, M.G. and his friend could repeat what they had seen. Carolyn testified that defendant was not making an immediate request but again suggesting plans for the future.

¶ 7     Following Carolyn's testimony, the State argued that Carolyn's testimony would be relevant to prove defendant's intent and the absence of a mistake. The State argued that the testimony in question was not "other crimes evidence" and was not "especially prejudicial in any way." Defense counsel argued that Carolyn's credibility was lacking and the evidence presented would be "far more prejudicial than it is probative." The trial court ruled that Carolyn's testimony would be admissible.

¶ 8     At trial, M.G. testified that he lived with defendant, his father, in New Lenox in November 2012. Around that time, M.G. went to a motel with defendant and defendant's girlfriend, Jen. When they arrived at the motel, M.G. played on his computer and watched television. At some point, defendant and Jen went into the bathroom together. Later, M.G. was on the bed, and defendant and Jen joined him. M.G. testified that defendant and Jen were touching each other "[a] little bit." Defendant asked Jen to touch M.G. and M.G. to touch Jen, which neither of

them did. M.G. testified that he was nervous and uncomfortable. Afterward, defendant told M.G. to keep everything that had happened in the room a secret.

¶ 9      On cross-examination, M.G. testified that he had previously spoken to a woman at the Children's Advocacy Center. That conversation took place in June 2013—7 months after the incident and 13 months before the trial. M.G. agreed that he had told the woman that he fell asleep in the motel room and awoke to discover defendant and Jen engaged in sexual activity. M.G. asserted that this story and his testimony were both correct. He testified that he woke up and saw defendant and Jen naked and "[t]ouching each other." Defendant told M.G. to keep it a secret.

¶ 10      The parties stipulated to certain records kept by the Manor motel in Channahon. Those records, published to the jury, showed that a Douglas Gordon from New Lenox rented a room on November 30, 2012, and checked out the next day.

¶ 11      Jennifer Mitchell testified that she dated defendant from October to December 2012, when M.G. was 11 years old. On the night of November 30, 2012, she and defendant decided to go to a motel. Defendant told Jennifer that he wanted to bring his son along so that he could "teach his son about sex." Jennifer did not like that idea but acquiesced to M.G. joining them at the motel. Jennifer, defendant, and M.G. drove to the Manor motel in Channahon. During the car ride, defendant "was telling [M.G.] that the things that happened in the hotel had to stay between us and nobody could ever know about it."

¶ 12      Jennifer testified that the room contained one full-sized bed. When they arrived, M.G. watched television on the bed while Jennifer and defendant had sexual intercourse in the shower. Afterward, Jennifer and defendant left the bathroom and lay on the bed with M.G. Jennifer wore only a long t-shirt while defendant wore only his underwear. Jennifer testified that defendant pushed her hand toward M.G.'s penis. She pulled her hand away and told defendant to stop.

¶ 13      Approximately a half hour later, Jennifer performed oral sex on defendant. Defendant asked M.G. if he wanted Jennifer to perform oral sex on him. M.G. declined. Jennifer testified that she and defendant then engaged in sexual intercourse. They were at the foot of the bed while M.G. was by the headboard. Jennifer and defendant were completely naked, and M.G. was awake. Jennifer testified that M.G. hid under the covers. Eventually Jennifer, defendant, and M.G. went to sleep in the same bed. M.G. was fully clothed, while Jennifer and defendant slept naked.

¶ 14      The State called Carolyn as its next witness. Carolyn's testimony was substantially similar to that presented at the hearing on the State's motion. Specifically, Carolyn testified that on multiple occasions in the past defendant had suggested demonstrating sexual intercourse for M.G. as a way to teach him about sex. The State rested following Carolyn's testimony.

¶ 15      Defendant testified on his own behalf. He denied that he had ever discussed the idea of teaching M.G. about sexual intercourse through demonstration with Carolyn. Defendant also testified that he had only been to the Manor motel in Channahon once in his life, in October 2010 with Carolyn. He found it to be "a very disgusting motel" and testified that he would never return there. He denied ever going to the Manor motel with M.G. or with Jennifer. Though defendant agreed that the records from the Manor motel showed his name and driver's license number on the night of November 30, 2012, he denied that it was his signature on the Manor motel record.

¶ 16 Defendant testified that he, Jennifer, and M.G. did go to a different motel in October 2012. He explained that they went there so M.G. could swim in the pool. He and Jennifer did not engage in any sort of sexual activity in front of M.G. on that occasion, nor did they ever do so. He had never demonstrated sexual intercourse for M.G. The defense rested following defendant's testimony.

¶ 17 The State recalled Carolyn in rebuttal. She testified that she had never been to the Manor motel. The State rested.

¶ 18 In instructing the jury, the trial court delivered Illinois Pattern Jury Instructions, Criminal, No. 3.14 (4th ed. 2000) (hereinafter, IPI Criminal 4th No. 3.14) over the defense's objection. Specifically, the court instructed:

"Evidence has been received that the defendant has been involved in conduct other than that charged in the indictment.

This evidence has been received on the issues of the defendant's motive, intent, and knowledge and may be considered by you only for that limited purpose.

It is for you to determine whether the defendant was involved in that conduct and, if so, what weight should be given to this evidence on the issues of intent and knowledge."

¶ 19 The jury found defendant guilty on both counts. Following a subsequent sentencing hearing, the trial court sentenced defendant to a term of two years' sex offender probation.|

¶ 20                                                    ANALYSIS

¶ 21 On appeal, defendant argues that the trial court abused its discretion in allowing Carolyn to testify that defendant had previously suggested demonstrating sexual intercourse for M.G. Specifically, defendant contends that the testimony was inadmissible because it was irrelevant and, alternatively, the risk of undue prejudice substantially outweighed any probative value. We reject this argument, as Carolyn's testimony was both relevant to and significantly probative of defendant's mental state, which the State was obligated to prove beyond a reasonable doubt.

¶ 22 Defendant also argues that the trial court abused its discretion in delivering IPI Criminal 4th No. 3.14 (titled "Proof of Other Offenses or Conduct") because the jury did not hear any evidence relating to defendant's prior conduct. We reject this argument as well, as a limiting instruction was necessary to ensure the evidence would be considered for proper purposes, regardless of whether that instruction was labeled a pattern instruction by the parties.

¶ 23                                    I. Admissibility of Evidence

¶ 24 The Illinois Rules of Evidence provide that, as a general matter, all relevant evidence is admissible. Ill. R. Evid. 402 (eff. Jan. 1, 2011). Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ill. R. Evid. 401 (eff. Jan. 1, 2011). Courts may exclude relevant evidence where the danger of unfair prejudice substantially outweighs its probative value. Ill. R. Evid. 403 (eff. Jan. 1, 2011).

¶ 25 Of course, all evidence is prejudicial in that it is intended to impact the fact finder's decision. Why would anyone put on evidence at trial that did not prejudice the opponent's case? In this sense, "the terms 'probative value' and 'prejudice' are technically synonymous."

*People v. Walston*, 386 Ill. App. 3d 598, 610 n.3 (2008). In the context of evidence admissibility, the court must only concern itself with that prejudice which is undue or unfair. Evidence is unduly prejudicial where it "will somehow cast a negative light upon a defendant for reasons that have nothing to do with the case on trial." *People v. Pelo*, 404 Ill. App. 3d 839, 867 (2010); see also, *e.g.*, *United States v. Mendez-Ortiz*, 810 F.2d 76, 79 (6th Cir. 1986) (" 'Unfair prejudice' *** does not mean the damage to the defendant's case that results from the legitimate probative force of the evidence; rather, it refers to evidence which tends to suggest decision on an improper basis.").

¶ 26   The offense of sexual exploitation of a child is committed where a person engages in a sexual act "with knowledge that a child *** would view his or her acts." 720 ILCS 5/11-9.1(a)(1) (West 2012). The State thus had the burden of proving beyond a reasonable doubt that defendant acted knowingly. Carolyn's testimony was clearly relevant, as it tended to make the fact that defendant acted knowingly far more probable.

¶ 27   Indeed, that testimony was of great probative value with respect to the mental state requirement. Defendant's previously expressed desire to teach M.G. about sexual intercourse through demonstration significantly bolsters an inference that he knew that M.G. would see what defendant and Jennifer were doing in the motel room and an inference that defendant actually intended that result. Similarly, that testimony would tend to defeat any inference that, for example, defendant thought M.G. was asleep while he engaged in sexual activity with Jennifer. The passage of time between defendant's prior statements to Carolyn and the events in question have little impact on the probative value of the evidence, as those statements bear striking factual similarity with the events that M.G. and Jennifer testified to. Moreover, defendant's prior statements expressly contemplated the passage of time—that is, he discussed the sexual demonstration as something he would like to do in the future.

¶ 28   To be sure, Carolyn's testimony did present some danger of unfair prejudice. Evidence that defendant repeatedly stated a desire to engage in sexual intercourse in front of his young son presents a risk of convincing the jury that defendant "is a bad person deserving punishment." *People v. Donoho*, 204 Ill. 2d 159, 170 (2003). Such risk, however, is ever-present in cases concerning sexual offenses committed against minors. Carolyn's testimony was strictly limited to the factual similarities between defendant's prior statements and the events in question, and that testimony was of a high probative value. Moreover, the trial court instructed the jury that Carolyn's testimony could only be considered insofar as it was probative of defendant's mental state or a lack of mistake. See Ill. R. Evid. 105 (eff. Jan. 1, 2011) (requiring a trial court to restrict the evidence to its proper purpose and to thus instruct the jury). Accordingly, we find that the trial court did not abuse its discretion in concluding that probative value was not "substantially outweighed by the danger of unfair prejudice." Ill. R. Evid. 403 (eff. Jan. 1, 2011).

¶ 29   Furthermore, in light of M.G.'s, Jen's, and defendant's testimony, the evidence of defendant's guilt is so overwhelming that any hypothetical error in allowing Carolyn's testimony is harmless as a matter of law.

¶ 30                          II. Jury Instruction

¶ 31   Defendant also argues that the trial court abused its discretion in delivering IPI Criminal 4th No. 3.14 to the jury—an instruction limiting the purposes for which Carolyn's testimony could be considered. Defendant contends that IPI Criminal 4th No. 3.14 should only be given

- 5 -

where the jury has heard evidence of a defendant's other *conduct*, whereas Carolyn's testimony in the present case concerned defendant's *statements*. Defendant insists that equating speech with conduct for the purpose of the jury instruction amounts to criminalizing defendant's speech and is thus a violation of his constitutional free speech rights. Solicitation normally is accomplished through speech. For obvious reasons, we reject the notion that speech is never conduct.

¶ 32 We note that defendant's argument regarding the jury instruction is somewhat paradoxical in nature. As a limiting instruction, it works to ensure that the jury does not consider the evidence for improper or prejudicial purposes. In other words, defendant is challenging the delivery of a jury instruction that worked in his favor. Moreover, it is immaterial whether evidence regarding defendant's statements should be considered evidence of his conduct. Once admitted, Carolyn's testimony was only relevant to defendant's mental state. See *supra* ¶¶ 27-28. Rule of Evidence 105 provides: "When evidence which is admissible *** for one purpose but not admissible *** for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper purpose or scope and instruct the jury accordingly." Ill. R. Evid. 105 (eff. Jan. 1, 2011). The trial court was thus required by rule to provide a limiting instruction, and whether the State referred to such an instruction as IPI Criminal 4th No. 3.14 is merely a matter of semantics.

¶ 33 We write further only to address defendant's brief constitutional argument. We reject that argument outright. Defendant has only cited to authorities supporting the general first amendment concept that the government may not proscribe or punish speech. From there, defendant simply asserts—without any citation or argument—that "using [defendant's] speech as the basis for the IPI [Criminal 4th No.] 3.14 jury instruction was almost akin to criminalizing his speech, and therefore was in clear violation of the foregoing authorities." No. It is well settled that a defendant's statements may be used as evidence against him, as with police confessions or certain statements expressly considered by the rules of evidence. See, *e.g.*, Ill. R. Evid. 803 (eff. Jan. 1, 2011). If a defendant's statements may be introduced as evidence without offending first amendment principles, it follows *a fortiori* that a jury instruction limiting the evidentiary purpose of those statements does not offend such principles.

¶ 34                                          CONCLUSION

¶ 35 For the foregoing reasons, we affirm the judgment of the circuit court of Will County.

¶ 36 Affirmed.