Order filed August 14, 2024.      2024 IL App (5th) 230084
Motion to publish granted
August 28, 2024.                    NO. 5-23-0084

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Williamson County. |
| | ) | |
| v. | ) | No. 18-CF-667 |
| | ) | |
| DEVIN O'DANIELL, | ) | Honorable |
| | ) | Michelle M. Schafer, |
| Defendant-Appellee. | ) | Judge, presiding. |

JUSTICE SHOLAR delivered the judgment of the court, with opinion.
Justices Boie and McHaney concurred in the judgment and opinion.

**OPINION**

¶ 1      Defendant was charged with first degree murder for the death of his infant son, C.O. Prior to trial, defendant filed a motion *in limine*, seeking to bar the introduction of his video-recorded police interview. The Williamson County circuit court granted the motion *in limine*, barring the State from presenting the video recording in its entirety. Pursuant to Illinois Supreme Court Rule 604(a)(1) (eff. Mar. 8, 2016), the State seeks interlocutory review of the circuit court's order. For the following reasons, we reverse and remand for further proceedings.

¶ 2                                I. Background

¶ 3      On November 26, 2018, the State charged defendant by three-count information related to the death of C.O. Count I charged defendant with aggravated battery of a child, a Class X felony, in that on November 23, 2018, defendant committed a battery and knowingly caused bodily harm

1

to C.O., in that defendant dropped C.O. on the floor causing a skull fracture and bleeding. 720 ILCS 5/12-3.05(b)(1) (West 2018). Count II charged defendant with aggravated domestic battery, a Class 2 felony, in that on November 23, 2018, defendant caused great bodily harm or permanent disfigurement to C.O., defendant's child, by dropping C.O. on the floor. *Id.* § 12-3.3(a). Count III charged defendant with domestic battery, a Class A misdemeanor, in that defendant knowingly made physical contact of a provoking nature with Claudia Bolivar, defendant's girlfriend, in that he pushed Bolivar to the ground. *Id.* § 12-3.2(a)(2).

¶ 4 On December 12, 2018, the State filed an amended information. The State amended count I to allege that on November 23, 2018, defendant intentionally caused great bodily harm to C.O. in that defendant applied significant force to the body of C.O., causing multiple layers of bleeding in the brain, optical nerve hemorrhage, and other injuries associated with closed-head injuries, resulting in C.O.'s death. The State also added count IV, first degree murder, in that defendant, without lawful justification, by some means applied significant force to the body of C.O. knowing such act created a strong probability of death or great bodily harm to C.O., ultimately causing C.O.'s death. *Id.* § 9-1(a)(2).

¶ 5 Detective Maria Dwyer indicated by affidavit of probable cause and through testimony provided at a preliminary hearing and arraignment held on December 18, 2018, that on November 23, 2018, three-month-old C.O. was taken to the hospital by his mother, Claudia Bolivar, where hospital staff found that C.O. was examined and found to be flaccid, without a pulse, not responding, cyanotic, and almost at room temperature. Hospital staff observed bruising to C.O.'s left upper lip and left ear. A CT scan revealed a skull fracture and "fresh brain bleed." A radiologist expressed concern about a prior injury in the same area of C.O.'s head.

2

¶ 6    Claudia was interviewed and advised law enforcement that she was at work between 5:30 p.m. and 9:30 p.m. and C.O. was left in the sole care of his father, the defendant. When Claudia returned to the residence, she found C.O. and defendant in the living room together with the lights off. Claudia picked up C.O. to change his diaper but "noticed he felt very limp." Claudia turned the lights on and observed that C.O. had "a bloody nose, a bruise on his nose, a bruise on his eye, and a bruise on the left side of his face." Claudia asked defendant what happened to C.O., but defendant continuously replied that nothing had happened.

¶ 7    Claudia attempted to secure C.O. in his car seat, and defendant tried to prevent her from leaving by pushing her down to the ground several times and raised his arm back as though he was going to strike her with the back side of his hand. Defendant took the car seat containing C.O. from Claudia's possession, took C.O. out of the front door, sat on a porch chair, and began to smoke a cigarette.

¶ 8    Claudia advised that she grabbed the car seat and took C.O. through the house and out the back door. Claudia contacted a neighbor across the street and asked for help. The neighbor, Rashawn McFadden, called the police without allowing Claudia inside of their home. During the time that Claudia waited outside of McFadden's home, defendant again took the car seat containing C.O. Defendant eventually placed the car seat on the ground next to her vehicle. Claudia was able to place C.O. inside of her vehicle and drove him directly to Heartland Regional Medical Center. Law enforcement found defendant walking and detained him.

¶ 9    Detective Dwyer of the Marion Police Department and Special Agent Rolape conducted an interview with defendant at the Marion Police Department at approximately 1:30 a.m. on the night of the incident. Shortly after the officers finished their interview, two officers with the Illinois State Police conducted an interview of defendant. During the interviews, defendant stated that he

3

took care of C.O. while Claudia worked. Defendant indicated that he was the only person with the baby while Claudia was at work. Defendant initially denied that anything had happened to the baby and indicated that he never observed any type of injuries to C.O., stating that Claudia came home and "freaked out." Later, the video-recorded interview shows defendant becoming visibly upset and exclaimed, "I dropped the baby!" Defendant indicated that he was feeding the baby and tripped on a tear in the carpet in the living room and dropped C.O. onto the carpeted floor. Defendant told law enforcement that C.O. fell approximately three to four feet. Detective Dwyer indicated that Dr. Todd Engdahl with the Heartland Regional Medical Center and Dr. Jason Warner with Cardinal Glennon Children's Hospital both noted that the event described by defendant would not have caused C.O.'s injuries. The force applied to C.O.'s body caused bleeding in his brain, optical nerve hemorrhage, and other injuries associated with a closed-head injury. The injuries eventually resulted in his death. Defendant's statements were recorded at the Marion Police Department, and the video recording included the interviews by both the Marion Police Department and the Illinois State Police law enforcement officials.

¶ 10    On November 21, 2022, defendant filed a motion *in limine* alleging that the video-recorded interview shows that "defendant became visually frustrated and angry with the interrogators." Defendant alleged that the "primary purpose of the State presenting the video during its case-in-chief is to improperly admit otherwise inadmissible propensity and character evidence prior to the defendant testifying." Defendant also argued that: "The defendant has the right to not testify in his own defense at trial, and he cannot be compelled to do so. Permitting the State to introduce the evidence during its case-in-chief improperly permits the State to present testimonial evidence." Therefore, defendant asked the circuit court to "enter an [o]rder prohibiting the State from introducing the video interrogation of the defendant during its case-in-chief." The defendant's

4

motion did not include any legal authority and did not specify any specific portion of the video that it found objectionable, but sought exclusion of the video-recorded interview in whole.

¶ 11   On December 21, 2022, the circuit court held a hearing on defendant's motion *in limine*. The State argued that "this is basically a motion to keep out the defendant's statement." The State argued that defendant was Mirandized and that:

> "He became visibly agitated. When describing what had happened during the incident, he admits that he dropped the baby. He gets agitated. Both of those detectives leave the room. Two other detectives come in to speak to him, and those are two male detectives, Warren and Ramage. They again Mirandize him. He again agrees that he understands his *Miranda* rights, and he goes on to speak with them about the incident."

¶ 12   The State argued that the interview was admissible as "a party-opponent statement" and contended:

> "He is very frustrated. He is screaming at detectives. He is angry. But that is what it is. It's his statement. It's a party-opponent statement. There is at no point anytime where he initiates any of his rights except for at the end when he says, I'm done talking, which they quit talking to him. And we are entitled to play his statement."

¶ 13   Defense counsel clarified that they were "not asking that his statement to the police or the questions that he answered to the police be suppressed at this point." Thus, the defendant's motion was not a motion to suppress statements. Rather, defense counsel asked that the "State not be permitted to play the actual video recording during its case in chief, not that the witnesses be barred from testifying as to the interrogation as it occurred." Defense counsel argued that the video was "a means for the State to introduce, bluntly, my client's bad behavior, his frustration, his anger."

5

Defense counsel noted that in the event defendant testified, the video could be used in rebuttal as a prior inconsistent statement or impeachment evidence.

¶ 14　In response, the State argued that the "video-recorded statement is the best evidence, and under the best evidence rule, we're entitled to play that." The State continued: "It's his state of mind, it's his demeanor, and it is the best evidence for us to show the jury."

¶ 15　After arguments of counsel, the circuit court stated as follows:

"All right. So it's clearly hearsay. It is best evidence. There is an exception, statement by a party-opponent. The question becomes, is it more probative than prejudicial? And without seeing what this is or determining the gravity of the behavior, it's difficult for the Court to make a determination. I mean, clearly, transcribed statement of the events could be presented. If it is the best evidence, it should be allowed. But I honestly need to see what I'm talking about before I decide if it's more probative or more prejudicial."

The circuit court asked the State to "put together the portions that you would both agree that the State may present" so the court could "examine it to make a full decision." The circuit court further noted that "if [defendant] does testify, the State is entitled to use those for impeachment purposes or any part of the rebuttal in their case."

¶ 16　The State filed a response to defendant's motion *in limine* on January 18, 2023, and indicated that it had provided the circuit court with an edited copy of the video recording which it intended to publish to the jury in its case-in-chief. The State argued that it was entitled to play the entirety of the edited version of the video and cited *People v. Clay*, 211 Ill. App. 3d 291, 302 (1990), for the proposition that "[a]ny statement by an accused person, unless excluded by the privilege against self-incrimination or other inclusionary rules, may be used against him as an admission." The State argued that defendant's statements were voluntary, relevant, and the

6

probative value was substantially outweighed by any unfair prejudice, pointing out that there was nothing unfair about the prejudice defendant suffers from his own actions during an interview.

¶ 17    The State provided the circuit court with a redacted video-recorded interview, attached to its responsive motion, which this court viewed as part of the record on appeal. The recording is approximately 57 minutes long. Defendant was initially interviewed by Detective Dwyer, of the Marion Police Department, and Special Agent Rolape, and defendant waived his *Miranda* rights. Defendant told law enforcement that he was home that evening with C.O., and when Claudia arrived home from work around 9 p.m., she "freaked out" and accused defendant of "dropping" the baby. Defendant advised law enforcement that the baby was "acting good" during the day and into the evening.

¶ 18    A detective informed defendant that the baby had a bruise on his eye, at which point defendant became agitated. Defendant accused the detective of arguing with him. Defendant reiterated that he did not see anything wrong with the baby while he cared for him. Defendant asked to call Claudia, and law enforcement advised defendant that Claudia was on the way to the hospital with the baby.

¶ 19    At this time, defendant became agitated and upset. Defendant yelled at law enforcement that "they ain't told me nothin.' " A detective told defendant that the baby had a brain bleed, bruising on his cheek, a bruise behind the ear, and a bloody nose. Defendant yelled that he wanted Claudia to tell him this. Defendant pounded his chest and yelled, "I'm the father!"

¶ 20    Detectives indicated that they wanted defendant's cooperation, and defendant yelled, "I dropped the baby!" Defendant indicated that he dropped the baby in the living room. He stated that this was an accident. Defendant said he tripped on a rug and dropped the baby. Defendant stated there was no change in the infant's behavior after the fall. Multiple times defendant yelled

7

"take me to jail." Defendant pointed to one of the detectives and said "done talking to you" and the detectives exited the room.

¶ 21    Approximately 25 minutes later, although the intervening time was redacted from the video, two detectives from the Illinois State Police entered the room. Defendant reaffirmed his *Miranda* rights. Defendant seemingly was calmer at this point in the interview, and he indicated that he tripped on a piece of carpet and dropped the baby. The baby fell face-down on the living room floor, and the baby cried. Defendant did not observe any injuries.

¶ 22    Detectives asked defendant about the blood on a wall in the living room, and defendant again became loud and frustrated. He asked to speak with Claudia. He indicated that he wished to go to sleep. Referring to Claudia, defendant indicated that he "told her not to call the cops." Defendant again stated, "I dropped him!" Defendant ultimately stated: "we're done." Detectives left the room; however, the video and audio recording continued. Defendant sat alone in the room stating, "f*** cops, f*** g*** jokes." Officers reentered the room, placed defendant in handcuffs, and indicated that defendant was being charged with aggravated battery of a child and domestic battery.

¶ 23    On February 7, 2023, the circuit court entered a final order on defendant's motion *in limine*. The circuit court's order noted that the "portions redacted by [the State] involve periods of time when Defendant is left alone in the interrogation room, without any substantive interaction with the arresting officers." According to the circuit court, "[t]he redacted portions reveal the Defendant punching his hand, cursing at the officers while becoming visibly hostile." Defendant states, "just take me to jail." The circuit court noted that defendant says, "this is why I told her not to call the cops," and the circuit court indicated that defendant made "other substantially prejudicial comments." The circuit court found that the "probative value is substantially outweighed by the

8

danger of unfair prejudice." "The behavior, comments and overall hostile/aggressive demeanor of Defendant could cast a negative light on Defendant which ultimately may affect the jury's consideration." Therefore, the circuit court ruled that the State "shall not be allowed to present the video interview" during its "case in chief" and granted defendant's motion *in limine*.

¶ 24 On February 15, 2023, the State filed a notice of appeal. On April 24, 2023, the State filed a certification of substantial impairment, noting that the circuit court's order *in limine* excluding evidence substantially impaired the State's ability to further prosecute the case.

¶ 25                                                    II. Analysis

¶ 26 On appeal, the State argues that the circuit court's decision to wholly exclude the evidence of defendant's video-recorded statement, which contained inculpatory evidence, was an abuse of judicial discretion. We agree, and for the reasons that follow, we reverse and remand for further proceedings.

¶ 27                                                    A. Jurisdiction

¶ 28 Defendant initially argues that this court lacks jurisdiction to consider the circuit court's order, because the circuit court did not suppress evidence. Defendant argues that the circuit court's order only limited the State's use of defendant's video-recorded statement because the circuit court left open the possibility that the State could introduce the video for purposes of impeachment and in rebuttal, via other means such as a transcript or testifying witness, as impeachment or rebuttal evidence or via a different redacted version. The State disagrees, arguing jurisdiction lies under Illinois Supreme Court Rule 604(a), because the circuit court's order has "the substantive effect" of suppressing evidence. The State argues that its ability to admit the video-recorded interview as direct evidence is suppression of that evidence, as other means, such as transcript or testimony of a witness, would not convey the same information as the video. Further, the State disagrees that

9

the circuit court's order invited it to submit further attempts at editing the video-recorded evidence for the circuit court's consideration.

¶ 29    Whether the appellate court has jurisdiction to consider an appeal presents a question of law that we review *de novo*. *People v. Salem*, 2016 IL 118693, ¶ 11. Whether the circuit court's order is appealable depends on the construction of Illinois Supreme Court Rule 604(a)(1) (eff. Mar. 8, 2016). *People v. Young*, 82 Ill. 2d 234, 239 (1980). The interpretation of a supreme court rule is a question of law reviewable under the *de novo* standard of review. *People v. Drum*, 194 Ill. 2d 485, 488 (2000).

¶ 30    Illinois Supreme Court Rule 604(a)(1) gives reviewing courts jurisdiction to consider the State's appeal from orders suppressing evidence in a criminal case. *People v. Brindley*, 2017 IL App (5th) 160189, ¶ 16. "The supreme court has emphasized that whether an order is appealable under Rule 604(a)(1) is determined *by the substantive effect of the order, not its label or the underlying motion*." (Emphasis added.) *Id.* When an order prevents information from being presented to the fact finder, evidence is suppressed, and the State may appeal that order. *Drum*, 194 Ill. 2d at 492. When the circuit court's order solely impacts how the State can present evidence, however, then the evidence has not been suppressed within the meaning of the rule. *In re K.E.F.*, 235 Ill. 2d 530, 540 (2009).

¶ 31    First, we note that the circuit court's final order on defendant's motion *in limine* video interview did not invite the State to submit further edited versions of the video-recorded interview for its consideration. To the extent that defendant argues that the video was not suppressed for this reason, we disagree. Defendant's motion is in the nature of a motion *in limine* and sought to exclude evidence on the basis of admissibility rather than to suppress evidence that was illegally obtained. The burden of going forward on the motion *in limine* was initially on defendant—the

10

proponent or party seeking to bar the evidence—to show why the evidence should not be admitted (see *People v. Smith*, 248 Ill. App. 3d 351, 359 (1993)). As the circuit court ruled that the video the State intended to present was inadmissible in its entirety, further attempts at edits would be unwarranted.

¶ 32    In *People v. Drum*, the State sought to admit the prior testimony of two codefendants who indicated that they would not testify at defendant's trial. *Drum*, 194 Ill. 2d at 491. The circuit court barred the use of the prior testimony, and the State appealed. *Id.* The supreme court considered whether it had jurisdiction under Rule 604(a)(1), ultimately concluding that evidence was "suppressed" within the meaning of the rule when the circuit court's order "prevents [the] information from being presented to the fact finder." *Id.* at 492.

¶ 33    The *Drum* court distinguished its decision in *People v. Truitt*, 175 Ill. 2d 148 (1997), *abrogated in part by People v. Miller*, 202 Ill. 2d 328 (2002). In *Truitt*, the State intended to use laboratory reports to prove the content, identity, and weight of a controlled substance pursuant to section 115-15 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-15 (West 1994)), which allowed the State, with certain procedural requisites, to establish lab results solely by means of a lab report, without live testimony from the analyst. *Truitt*, 175 Ill. 2d at 149-50. The circuit court held that section 115-15 was unconstitutional, and this ruling required the State to present testimony from the person who analyzed the substance in question and prepared the lab report. *Id.* at 150. The State appealed, and in construing Rule 604(a)(1), the *Truitt* court concluded that it had no jurisdiction over the matter because the circuit court's order did not have the effect of suppressing evidence. *Id.* at 152-53. The court noted that the order would not prevent any facts or opinions from being presented to the jury. *Id.* at 152. Instead, the sole impact of the order would be on the way those facts and opinions were presented. *Id.* Instead of merely introducing a lab

11

report into evidence, the order simply required the State to present testimony from an actual witness who could testify about the laboratory tests and results. *Id.*

¶ 34    Similarly, in *In re K.E.F.*, the State sought to admit a recording of the victim's out-of-court statement pursuant to section 115-10 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-10 (West 2006)), and the circuit court indicated it would admit the recording if the State called the victim to the stand and asked her some questions about her statement pursuant to the hearing required by section 115-10. *In re K.E.F.*, 235 Ill. 2d at 539. For reasons that the supreme court stated "defy comprehension," the State chose not to ask the victim the necessary questions for the admission of the recording. *Id.* The circuit court, therefore, denied the State's motion to admit the recorded statement, and the State filed an interlocutory appeal pursuant to Rule 604(a)(1). *Id.* at 535, 537. The appellate court dismissed the State's appeal for lack of jurisdiction (*id.* at 537), and the Illinois Supreme Court affirmed (*id.* at 541). The supreme court held that, as in *Truitt*, "admissibility of the evidence in question was a matter entirely within the State's control." *Id.* at 540. The court noted that "the prosecution had the option of presenting live testimony to secure admission of the information it sought to introduce, an option that it declined to pursue." *Id.* The court concluded that, because the minor could still testify to the events relevant to the charge, "the sole impact of the circuit court's order [was] on the *means* by which the information [was] to be presented" and, thus, it was "not suppression of evidence." (Emphasis in original.) *Id.*

¶ 35    Unlike *Truitt* and *In re K.E.F.*, here, the contents of the video-recorded interview were not admissible under any other alternative means. There is a fundamental distinction between a properly Mirandized video-recorded interview of defendant, closely following the events at dispute, and the lab reports the State sought to admit in *Truitt*. Moreover, here, the suppressed evidence is an actual video recording, which captures defendant's words and demeanor closely

12

following the time that the alleged crime was committed. While the defendant argues that the State could present defendant's statements by other means, such as testimony of the detectives who were present during the interviews, testimony, which may or may not be presented, is not a means of presenting the same evidence contained on the recording. See *Brindley*, 2017 IL App (5th) 160189, ¶ 23. Therefore, *Truitt* is not applicable.

¶ 36    Defendant's reliance upon *In re K.E.F.* is misplaced. Pursuant to *K.E.F.*, where an order solely impacts how the State can present the evidence, the evidence has not been suppressed within the meaning of Rule 604(a)(1), and consequently appellate jurisdiction is lacking. *In re K.E.F.*, 235 Ill. 2d at 540. Here, under the circuit court's order, the State did not have the means to secure the admission of the recording by alternate means. See *id*. As correctly noted by the State, the State could not compel defendant to testify, reiterate his statements, or facilitate a means for the jury to see him following the discovery of the injuries to C.O. We agree with the State that "it is a false equivalence to claim that impeachment and rebuttal provide an alternate means of presenting the video-recorded statement, when the admission of such evidence in those circumstances is wholly contingent upon the occurrence of an event over which the State has no control." For these reasons, *In re K.E.F* is distinguishable.

¶ 37    We find *People v. Brindley*, 2017 IL App (5th) 160189, instructive. In *Brindley*, the circuit court granted defendant's motion to suppress an audio-video recording of a drug transaction. *Id.* ¶ 23. The State appealed that ruling to this court under Rule 604(a)(1). *Id.* ¶ 1. Prior to considering the merits of the appeal, we addressed our jurisdiction. *Id.* ¶ 14. We rejected defendant's contention that the circuit court's order "simply impacted the means by which the State could present the facts depicted in the recording" because it could instead present the testimony of the confidential informant about the transaction. *Id.* ¶ 22. We explained that "the suppressed evidence [was] actual

13

audio-video recording of relevant events as they occurred, capturing the defendant's exact words, demeanor, and visual manifestations at the time he is alleged to have committed the crimes charged." *Id.* ¶ 23. As such, we found that testimony describing these events was "not the same evidence" as the recording itself. *Id.* For this reason, we concluded that the order excluding the recording had the substantive effect of suppressing evidence and that we, therefore, had jurisdiction over the appeal. *Id.* ¶ 24.

¶ 38    Unlike the cases defendant relies upon, here, there is no live witness that can be compelled to testify to mirror the evidence barred by the circuit court's ruling. Defendant seems to suggest that an officer could testify about defendant's interview, including his reactions and nonverbal conduct. However, as properly noted by the State, such testimony would merely convey the officer's subjective interpretation of the interview and his recollection of defendant's responses. A victim's demeanor when making a statement is very important in determining the weight to be given that statement. *People v. Hubbard*, 264 Ill. App. 3d 188, 194 (1994). Where, as here, a video-recorded interview is available and lawfully obtained, it serves as the most accurate and reliable evidence of the interview.

¶ 39    In the case before us, the suppressed evidence is the video-recorded interview of defendant recording relevant events immediately following the death of the infant. The video captured defendant's words and demeanor shortly after the time he was alleged to have committed the crimes charged. The State could not compel defendant to testify, reiterate his statements, or facilitate a means for the jury to see him following the incident at dispute. Therefore, the circuit court's order suppressing the recording has the substantive effect of suppressing evidence. Accordingly, we find that we have jurisdiction to consider the merits of this appeal.

¶ 40                     B. Defendant's Motion *in Limine*

¶ 41    Turning to the merits, the State argues that the circuit court erred by suppressing the redacted video-recorded interview of defendant. A circuit court's decision whether to admit evidence is reviewed for an abuse of discretion. *People v. King*, 2020 IL 123926, ¶ 35. "An abuse of discretion occurs only where the trial court's decision is arbitrary, fanciful, or unreasonable to the degree that no reasonable person would agree with it." *People v. Rivera*, 2013 IL 112467, ¶ 37.

¶ 42    Defendant's motion *in limine* sought to exclude the video recording of defendant's statements to police in the hours after defendant's infant child was found with significant injuries after being in the sole care of defendant. Defendant argued in the circuit court that the State's primary purpose of presenting the video during its case-in-chief would be to improperly admit otherwise inadmissible propensity and character evidence prior to defendant testifying at trial. Defendant also argued at the hearing on his motion that the video is "simply a means for the State to introduce, bluntly, my client's bad behavior, his frustration, his anger as a means to introduce those issues to the jury." Defendant did acknowledge that the statements were admissible and that the State's witnesses would not be barred from testifying to the contents of the interrogation. Thus, the only evidence that defendant sought to exclude was the actual recording, not testimony about the events depicted on the recording. The motion *in limine* additionally argued that permitting the State to play the video-recorded interview impermissibly compelled defendant to testify in his own defense at trial; however, this argument was abandoned in defendant's appellate brief.

¶ 43    In the circuit court, the State argued that, pursuant to Illinois Rule of Evidence 403 (eff. Jan. 1, 2011), the video-recorded interview's probative value was not substantially outweighed by its prejudicial effect. The circuit court's orders recite the balancing test from Rule 403, while also

15

mentioning propensity evidence consistent with an analysis under Illinois Rule of Evidence 404 (eff. Jan. 1, 2011).

¶ 44 On appeal, the State argues that the circuit court abused its discretion in granting defendant's motion *in limine*, where the probative value of the evidence was not substantially outweighed by any unfair prejudice to defendant. Defendant maintains that the primary reason the State sought to introduce the video recording of his police interrogation was to highlight defendant's demeanor during the interview, which showed him upset, cursing, and at times aggressive. Defendant argues that such evidence constitutes evidence of other crimes, wrongs, or acts which are generally inadmissible if the purpose of such evidence is merely to show that the person has a bad character and to suggest that the person must have therefore behaved badly relative to the charged offense. See Ill. R. Evid. 404(b) (eff. Jan. 1, 2011) ("Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith" on a particular occasion.). Such evidence includes not just acts which constitute criminal offenses but any bad or wrongful acts. *People v. Davis*, 248 Ill. App. 3d 886, 891 (1993).

¶ 45 A motion *in limine* is addressed to a circuit court's power to admit or exclude evidence. *People v. Williams*, 188 Ill. 2d 365, 369 (1999). Motions *in limine* are used to bring the circuit court's attention to potentially inadmissible evidence and obtain a pretrial order from the circuit court excluding or permitting the evidence. *People v. Owen*, 299 Ill. App. 3d 818, 822 (1998). Because a ruling on a motion *in limine* can restrict evidence, the motion must be specific and allow the circuit court and the parties to understand what evidence is at issue. *People v. Stevenson*, 2014 IL App (4th) 130313, ¶ 27. This allows the movant to carefully identify the evidence sought to be excluded and articulate his or her argument in support. *Id.* A written motion eliminates confusion

16

and misunderstanding by defining the evidence at issue and capturing the movant's arguments. *Id.* We mention this importance where, in the present case, neither defendant nor the circuit court cite the rules of evidence or other legal authority relied upon in the lower court. This lack of authority clearly caused confusion, where, in this court, defendant's brief focuses on character evidence contemplated by Illinois Rule of Evidence 404 (eff. Jan. 1, 2011), while the State's briefs focus on the balancing test contemplated by Illinois Rule of Evidence 403 (eff. Jan. 1, 2011).

¶ 46    In resolving the evidentiary issue presented in a motion *in limine*, a circuit court considers the movant's offer of proof. *Stevenson*, 2014 IL App (4th) 130313, ¶ 28. An offer of proof may be formal or informal, but an informal offer of proof must identify the complained-of evidence with "particularity." *Id.* Here, because defendant sought the exclusion of the video recording in its entirety, the offer of proof was an unredacted copy of the recording. The State also submitted a proposed redacted copy of the recording that it intended to present to the jury in its case-in-chief.

¶ 47                                C. Rule 404

¶ 48    Due to the apparent confusion regarding the arguments below and the difference in understanding of the circuit court's ruling made apparent by the parties' briefs to this court, we will briefly address Illinois Rule of Evidence 404 (eff. Jan. 1, 2011). The law distrusts the inference that, because a person committed other crimes or bad conduct, he is more likely to have committed the crime charged. *People v. Brown*, 319 Ill. App. 3d 89, 99 (2001). Thus, where the other-acts evidence has no value beyond that inference, it is excluded. *People v. Manning*, 182 Ill. 2d 193, 214 (1998). Even other-acts evidence that is relevant for a proper purpose will be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. *People v. Pikes*, 2013 IL 115171, ¶ 11.

¶ 49    First, we note that the video-recorded interview went directly to an element of the crime charged and, thus, it defies logic that it would be introduced merely to establish defendant's general propensity to commit the crime charged. The evidence is directly relevant to whether or not defendant committed the crime charged. Defendant was the sole caretaker for C.O. during the time that he was fatally injured. Defendant's description of the events of the evening goes directly to the elements of the charged offenses. Further, as previously mentioned, an individual's demeanor when making a statement is very important in determining the weight to be given that statement. *Hubbard*, 264 Ill. App. 3d at 194. Thus, defendant's demeanor is probative to the jury's determination of the credibility of his statements.

¶ 50    Even if we agreed that defendant's demeanor during his custodial interview constituted other bad acts as contemplated by Rule 404, such evidence may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *Id.* Defendant's statement to the officers was that he did not see anything wrong with C.O. while he cared for him, and that nothing out of the ordinary occurred on that evening. Eventually, defendant stated that the injuries were inflicted by accident, when the defendant tripped and dropped C.O. Defendant is charged with a specific intent crime and has, at least prior to trial, indicated his likely defense of accident. Thus, intent is expected to be at issue in this particular trial.

¶ 51    While defense counsel further argued that propensity was the sole purpose for introducing the evidence at trial, counsel did not argue that the video-recorded interview was not relevant to show *modus operandi*, motive, intent, or any other proper fact, consistent with Rule 404. Counsel, in fact, argued that the evidence of defendant's statements and demeanor was admissible in another form, such as by witness testimony or transcript, which would not be the case were the evidence

18

offered solely to show defendant's character for hostility, anger, or violence for the sole purpose of indicating his propensity to commit the present offense. Further, the circuit court's order did not indicate that it considered whether the orders were relevant for any purpose other than propensity, and then conduct a balancing test. The circuit court seemingly conducted the balancing test consistent with Rule 403.

¶ 52                                    D. Rule 403

¶ 53    We will now turn to the circuit court's ruling that defendant's video-recorded interview was more prejudicial than probative. We begin with the basic principles governing the admissibility of a defendant's custodial statements to police officers. Generally, evidence is admissible if it is relevant. Ill. R. Evid. 401 (eff. Jan. 1, 2011). Relevant evidence is defined as evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. *Id.* To establish the relevance of a piece of evidence the proponent must (1) identify the fact that it is seeking to prove with the evidence, (2) explain how that fact is of consequence, and (3) show how the evidence tends to make the existence of this fact more or less probable than it would be without the evidence. *People v. Maldonado*, 402 Ill. App. 3d 411, 418 (2010).

¶ 54    Pursuant to Illinois Rule of Evidence 801(d)(2) (eff. Jan. 1, 2011), a defendant's out-of-court statements generally are not covered by the rules against hearsay and thus are admissible at his trial. *People v. Harper*, 2013 IL App (4th) 130146, ¶ 13. If a defendant receives his *Miranda* warnings and chooses to speak with police officers, his statements are admissible as evidence against him so long as the statements given are voluntary. *People v. Harris*, 2012 IL App (1st) 100678, ¶ 52. Here, the circuit court found that defendant's statements were voluntary.

19

¶ 55 Further, statements made by police officers when questioning a defendant, including opinions and observations regarding the defendant's guilt or credibility, are generally relevant and admissible to demonstrate the statements' effects on the defendant, to provide context to the defendant's responses, or to explain the logic and course of the officers' interview or investigation. *People v. McCallum*, 2019 IL App (5th) 160279, ¶ 56. Such is the case even if the statements themselves would not be admissible as direct testimony. *Id.*

¶ 56 Relevant evidence may, however, be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. Ill. R. Evid. 403 (eff. Jan. 1, 2011). "Evidence is *unduly* prejudicial only if it 'cast[s] a negative light upon the defendant *for reasons that have nothing to do with the case on trial*' [citation], or invites the jury to decide the case 'on an improper basis, commonly an emotional one, such as sympathy, hatred, contempt, or horror' [citation]." (Emphases in original.) *People v. Romanowski*, 2016 IL App (1st) 142360, ¶ 30. A confession is like no other evidence. *People v. Rebollar-Vergara*, 2019 IL App (2d) 140871, ¶ 119. It is probably the most probative and damaging evidence that can be admitted against a defendant. *Arizona v. Fulminante*, 499 U.S. 279, 296 (1991). Here, the recording is the strongest evidence of defendant's statements during his interview, as well as defendant's demeanor in the hours after the commission of the alleged offense. Defendant recounts the events that occurred earlier that evening, indicating that nothing occurred that would injure C.O. Then, defendant changed his version of events, indicating that he dropped the baby, exposing inconsistencies between defendant's initial statement and his later statement. The video evidence is undoubtedly relevant, as it contains defendant's accounting of the events within hours of the alleged incident. Here, defendant's child was injured—and ultimately perished—while in

20

defendant's exclusive care. Significantly, the circuit court noted that defendant's "statements are relevant to the issues in this case, as they go directly to Defendant's recollection of the events of November 23, 2018, which gave rise to the Information filed against him on November 26, 2018." Further, "[i]t is well settled that testimony regarding a defendant's silence or nonverbal conduct during questioning subsequent to a valid waiver of rights is admissible." *People v. Theis*, 2011 IL App (2d) 091080, ¶ 48. It is well within the province of the jury to make inferences from the defendant's nonverbal conduct and demeanor. *People v. Vaughan*, 2015 IL App (3d) 120996-U, ¶ 54.

¶ 57    Because we find the evidence relevant, we next consider whether its probative value is outweighed by the risk of unfair prejudice. "Under Rule 403, relevant evidence may be excluded if its probative value is substantially outweighed by the risk of unfair prejudice or confusion of the issues or the potential for misleading the jury." *People v. Epstein*, 2022 IL 127824, ¶ 10. "Of course, all evidence is prejudicial in that it is intended to impact the fact finder's decision." *People v. Gordon*, 2017 IL App (3d) 140770, ¶ 25. " '[U]nfair[ ] prejudice' means that the evidence in question will somehow cast a negative light upon a defendant for reasons that have nothing to do with the case on trial." (Internal quotation marks omitted.) *People v. Prather*, 2012 IL App (2d) 111104, ¶ 23.

¶ 58    In the case before us, the circuit court determined that the video-recorded interrogation of defendant unfairly prejudiced him. The circuit court's order noted that the video "reveal[s] the Defendant punching his hand, cursing at the officers while becoming visibly hostile." Defendant states, "just take me to jail." The circuit court noted that defendant says, "this is why I told her not to call the cops," and the circuit court indicates that defendant made "other substantially prejudicial comments." The circuit court found that the "probative value is substantially outweighed by the

21

danger of unfair prejudice." "The behavior, comments and overall hostile/aggressive demeanor of Defendant could cast a negative light on Defendant which ultimately may affect the jury's consideration." Therefore, the circuit court ruled that the State "shall not be allowed to present the video interview" during its "case in chief" and granted defendant's motion *in limine*.

¶ 59    While defendant's demeanor during his custodial interview has the potential to cast him in a negative light, this was a risk defendant chose when he voluntarily waived his *Miranda* rights and agreed to talk to the police. A fact finder should not be prevented from considering defendant's demeanor merely because that risk did not work out in his favor.

¶ 60    We cannot reasonably find that the probative value of defendant's video-recorded interview, showing him provide a statement that nothing unusual occurred that would have injured his infant son, and then, exclaiming that he dropped the baby, is substantially outweighed by any potential for unfair prejudice. Nor can we reasonably find that the video-recorded interview as a whole unfairly prejudices defendant. Defendant was aware that he was being audio and video recorded, and he waived his *Miranda* rights accordingly. Defendant cannot now complain that there were times that he shouted, yelled, and acted out during his statement. Although defendant frequently had emotional outbursts during his interrogation, he ultimately stated that he "dropped the baby." These outbursts are not "likely to arouse feelings of sympathy, horror, or disgust beyond those that might arise from the nature of the criminal charges against the defendant." *Id*. Moreover, as noted by the State, some jurors may view the video sympathetically to defendant, who frequently inquired about the status of his injured son. However, both of defendant's explanations for the events of the evening contained in his video- recorded interview were inconsistent with law enforcement's findings of blood on a wall of the home, further bolstering the significant probative value of the evidence. Defendant's statements also served to corroborate the testimony of other

witnesses regarding the events that occurred before and after he was alone with C.O. Despite the deferential standard of review, here, we find the circuit court's decision to be an abuse of discretion.

¶ 61    Accordingly, we reverse the circuit court's ruling on defendant's motion *in limine* that the video-recorded interview, as a whole, should be excluded from the State's case-in-chief on the basis that its probative value was substantially outweighed by any unfair prejudice as an abuse of discretion. On remand, the circuit court may (1) reconsider defendant's motion *in limine* in accordance with the views expressed herein, carefully considering specific portions of the video-recorded interview, and issue an order which gives the parties an accurate understanding of its reasoning and limitations; (2) require defendant to amend his motion *in limine* to be more specific and identify, with particularity, the evidence sought to be excluded and the reasons therefor; or (3) decline to entertain the motion, or portions thereof, until they are ripe for consideration.

¶ 62                       III. Conclusion

¶ 63    For the foregoing reasons, we reverse the order of the circuit court of Williamson County granting defendant's motion *in limine* that suppressed the video recording of defendant's interview with law enforcement, and remand for further proceedings consistent with this decision.

¶ 64    Reversed and remanded.

*People v. O'Daniell*, 2024 IL App (5th) 230084

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Williamson County, No. 18-CF-667; the Hon. Michelle M. Schafer, Judge, presiding. |
| **Attorneys for Appellant:** | Patrick Daniel Daly, of State's Attorneys Appellate Prosecutor's Office, of Mt. Vernon, for the People. |
| **Attorneys for Appellee:** | Yasaman Hannah Naval, of State Appellate Defender's Office, of Chicago, for appellee. |